In re Estate of Hammer.

(No. 336—Decided March 19, 1955.)

*Mr. Francis M. Marley,* for appellant.
*Mr. Paul A. Flynn,* for appellee.

YOUNGER, J. This is an appeal from the Common Pleas Court of Seneca County. It arises by reason of the sustaining of a motion in the Probate Court to set aside the order of probate of the will of Mary Hammer. Because no record was made of the proceedings in the Probate Court, the executor appealed to the Common Pleas Court so that a record could be made as provided for in Section 2101.42, Revised Code. After a hearing was had the Common Pleas Court dismissed the appeal from the Probate Court, and from that order the executor appeals here.

The application for the probate of the will, filed February 6, 1952, showed a large number of nieces, nephews, grandnieces and grandnephews, about forty of whom were listed therein as residents of Ohio. All these were eventually served with notice of probate or waived notice, except Earl Wagner, who was listed in the application by the proponent of the will—a lawyer who was named as executor in the will—as a nephew residing at Coldwater, Ohio. The summons issued for him to the sheriff of Mercer County was returned to the court on February 15, 1952, with the notation by the sheriff, "Unable to locate the within named Earl Wagner within our bailiwick. Have information he may be living in Akron, Ohio."

Among the nephews of the decedent is Orrin Hammer, one of the appellees in this case. He was represented in the probate proceedings, the Common Pleas Court and this appeal by the same attorney. He and his attorney co-operated with the proponent of the will in locating several of the heirs, and the attorney, on March 8, 1952, wrote the proponent of the will that Earl Wagner's mother, Henrietta, was deceased and that her two sons Erwin and Earl had both died, leaving no issue, according to the information given him by his client, Orrin Hammer. Later, on March 15, 1952, in another letter, the statement is again made that Orrin Hammer had information that Earl Wagner was deceased and a notation to that effect should be

made on the record. The application now bears the notation, after the name of Earl Wagner, printed in ink, "deceased." By whom it was placed there is not shown. Later, on March 27, 1952, in still another letter to the proponent, this attorney states that Orrin Hammer had been told by at least a half dozen people that Earl Wagner was deceased and left no children, and if a note of that fact "is made in the proceeding, it will obviate the necessity of pursuing that phase of the matter any further." He suggested further that unless the proponent proceeded with "all possible diligence" he would be compelled to file a motion to dismiss the application for probate for failure to prosecute it within a reasonable time. On April 28, the attorney wrote a letter to the acting probate judge, with a carbon copy to the proponent, advising the judge that some additional waivers had been procured and "that all parties are before the court."

Hearings had been held before the acting probate judge previously, on April 14, at which time the same attorney had cross-examined the two subscribing witnesses to the will. Further proceedings were thereafter had, and on May 16, 1952, the will was admitted to probate and the executor appointed.

The evidence shows further that the executor had no knowledge that Earl Wagner was alive and living in Akron at the time of the probate of the will, but that he relied upon the representation of the appellee made through his attorney that Earl Wagner was deceased and left no heirs at law.

The evidence shows further that about two months after the will was admitted to probate, a niece of the decedent contacted Earl Wagner at Akron, through a neighbor who was working in Akron, and that at a family picnic held a short time thereafter the death of Mary Hammer and the administration of her estate were discussed with Earl Wagner.

Thereafter, on September 16, 1952, a petition was filed in the Common Pleas Court to contest the will, in which action Earl Wagner and Orrin Hammer, the appellees herein, were plaintiffs, together with a number of other heirs.

The evidence shows further that Earl Wagner died on August 8, 1953, leaving a widow and three daughters as his only heirs at law, who, on September 15, 1953, sixteen months after

the probate of the will, filed the motion in the Probate Court to set aside the order of probate, upon which this case arises.

After hearings were held on the motion, the Probate Court, on January 6, 1954, set aside the order of probate for the reason that Earl Wagner was a resident of Ohio at the time of the probate and had not been served with notice thereof.

From that order, the executor has appealed, and we are immediately met with a motion to dismiss the appeal on the ground that the executor is not a proper party to prosecute the appeal. This motion is strongly argued by counsel, with scant authority for or against the question.

We hold, however, that in a case such as this, where the will has been admitted to probate and the executor has accepted the trust and entered upon the discharge of his duties thereunder, the executor is not only a proper party, but he is under a duty to his decedent, whose personal representative he is in carrying out the terms of the will, and to the legatees and devisees who are not parties to the probate of the will and whose rights would otherwise be jeoparized, even without their knowledge, to perfect and prosecute an appeal from an order of a Probate Court which sets aside the probate of a will, and which order is absolutely void.

The Supreme Court of Ohio, by Bradbury, J., says, in *Feuchter* v. *Keyl,* 48 Ohio St., 357, at page 366, 27 N. E., 860:

"It is said that notice to the individual, who had been named in the will as the executor thereof, was by relation notice to all the devisees therein. It is no doubt true that an executor, after he has accepted the trust and entered upon its execution, is in many respects the representative not only of the estate, but of all the persons interested therein."

Such a void order clearly adversely affects and aggrieves the executor in his representative and fiduciary capacity.

The order of the Probate Court in setting aside the order of probate is void for three reasons.

In the first place, the record before this court shows by the transcripts of both the Probate Court and the Common Pleas Court proceedings that there is included therein by reference the pleadings and original papers in Case No. 28304 in the Seneca County Common Pleas Court, which is a will contest case in-

volving the will of Mary Hammer and the parties to this case, duly filed within the six-month period and undisposed of. Upon the filing of this case the Probate Court, following the statute, duly certified the will, order of probate and other necessary papers to the Common Pleas Court.

Upon the certification of the will and related papers to the Common Pleas Court and until the return to the Probate Court of the certificate from the Common Pleas Court as to the result of the case, that is, whether the paper writing is or is not the last will of the decedent, the Probate Court is without any jurisdiction to entertain a motion to set aside the order of probate.

In the second place, the Probate Court, in setting aside the probate of the will, relied upon the case of *Scholl* v. *Scholl,* 123 Ohio St., 1, 173 N. E., 305, which held that the requirement of Section 10507, General Code, that upon the application for the probate of a will notice shall be given to the widow, husband and next of kin of the testator, resident of the state, is mandatory and jurisdictional and that an order of probate of a will without such notice is void and subject to direct attack by those who neither received notice nor waived notice thereof.

The decision of the Supreme Court in the *Scholl case* was made on October 29, 1930, and the statute in force at that time (Section 10507, General Code) provided that ''no will shall be admitted to probate without notice to the widow or husband and next of kin of the testator, if any, resident in the state * * *.''

However, this statute was subsequently amended by adding the words, ''known to be residents of the state'' (Section 10504-17, General Code), and this amendment was in effect at the time of the probate proceedings herein involved. The question presented in construing the amendment is, ''known *by whom* to be residents of the state.''

We have no difficulty in holding that this knowledge must be had by those whose duty it is to give the notice in the first place, that is, either the proponent of the will or the court.

There is nothing in the record to show that the court had any knowledge that Earl Wagner was alive and in Akron, except that the return of the Sheriff of Mercer County states that he had information that ''he *may* be living in Akron.'' This is

very indefinite, no street address is given and it is not a positive statement. On the other hand, the court was informed by Orrin Hammer, one of the appellees, through his attorney, that "all parties are before the court." The evidence is uncontradicted that the executor of the will was not related to the decedent or any of the heirs at law, and of necessity had to depend to a large extent upon the heirs living in Fostoria, whom he knew, to supply him with information as to the whereabouts of the remaining heirs.

There is no evidence whatsoever in the record tending to show that Earl Wagner was known to be a resident of the state at the time of the probate, either by the proponents of the will or the court, or, for that matter, by any of the sixty or more heirs at law in the case. Orrin Hammer testified that the first he knew Earl Wagner was alive and living in Akron was on July 8, 1952, some two months after the order of probate.

Lastly, the order of the Probate Court is void because Earl Wagner elected his remedy and joined with several other heirs as plaintiffs in the will contest case. He knew of the probate of the will for thirteen months before his death. He never contacted the executor nor filed any objections with the Probate Court. By bringing the will contest case he definitely admitted the probate of the will and was barred from making any attack upon the regularity of the order of probate or the authority and jurisdiction of the court that made it. His heirs at law have no greater rights than he had and are bound by his election.

The Supreme Court, in *Stacey* v. *Cunningham,* 69 Ohio St., 176, 68 N. E., 1001, has held:

"3. By the bringing of an action to contest the validity of a will, under the statute, plaintiffs admit the probate of the will so put in contest, and will not, therefore, on the trial of said cause, be permitted to question or deny either the regularity of the order of probate, or the authority and jurisdiction of the court that made it."

Finally, if we grant, for the purpose of argument, that the Probate Court did have jurisdiction to entertain the motion, we are of the opinion that the court had neither a statutory right nor the inherent power to set aside the order of probate

upon a mere motion, filed sixteen months after probate, at a different term of court and without notice to any of the heirs at law, legatees or devisees. The administration of an estate, especially with a will involved, affects too many substantial rights of the widow, heirs at law, legatees, devisees and creditors, the enforcement of which are regulated by rigid time schedules, to indulge in such off-again, on-again procedure.

The motion to set aside the order of probate should have been dismissed and the action of the Common Pleas Court in sustaining the Probate Court in this action is reversed. The cause will be remanded for further proceedings in accordance with this opinion.

*Judgment reversed.*

QUATMAN, P. J., and MIDDLETON, J., concur.